**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

**ASHER PAUL MADRID,**

       **Plaintiff,**

**v.**                                    **No. CIV-12-0723 JAP/LAM**

**CAROLYN W. COLVIN,[1] Commissioner**
**of the Social Security Administration,**

       **Defendant.**

# PROPOSED FINDINGS AND RECOMMENDED DISPOSITION[2]

**THIS MATTER** is before the Court on Plaintiff's *Motion to Reverse and Remand for Rehearing With Supporting Memorandum (Doc. 22)*, filed in this case on November 30, 2012. Defendant filed a response to the motion on January 28, 2013 (*Doc. 23*), and Plaintiff filed a notice of completion of briefing on February 8, 2013 (*Doc. 24*). United States District Judge James A. Parker referred the claims raised in the motion to the undersigned for proposed findings and a recommended disposition, and a hearing, if necessary. *Order of Reference (Doc. 7)*. The Court has reviewed Plaintiff's motion and Defendant's response, and relevant law. Additionally, the Court has meticulously reviewed and considered the entire administrative record. [*Docs. 19*

---

[1]Pursuant to Fed. R. Civ. P. 25(d), Ms. Colvin, who is the new Commissioner of the Social Security Administration, was automatically substituted as the named defendant in this case in place of the former Commissioner, Michael J. Astrue.

[2]**Within fourteen (14) days after a party is served with a copy of these proposed findings and recommended disposition, that party may, pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2), file written objections to such proposed findings and recommended disposition. A party must file any objections with the clerk of the United States District Court for the District of New Mexico within the fourteen-day period allowed if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed. Pursuant to Fed. R. Civ. P. 72(b)(2), a party may respond to another party's objections within fourteen (14) days after being served with a copy of the objections.**

and *20*].  For the reasons set forth below, the Court recommends that Plaintiff's *Motion to Reverse and Remand for Rehearing With Supporting Memorandum (Doc. 22)* be **GRANTED in part** and **DENIED in part**, and the decision of the Commissioner of Social Security (hereinafter "Commissioner") be **REMANDED**.

## I.  Procedural History

On March 10, 2010, Plaintiff filed applications for Supplemental Security Income (hereinafter "SSI") and Disability Insurance Benefits (hereinafter "DIB"), alleging that he became disabled on April 1, 2008.   [*Doc. 19-7* at 2-4 and 5-6].  Plaintiff states that he became unable to work due to "BIPOLAR/PSYCHOTIC FEATURES/DEPRESSION" and "ADHD/ANXIETY." [*Doc. 19-8* at 31].  Plaintiff's applications were denied at the initial level on July 6, 2010 (*Doc. 19-5* at 2-5), and at the reconsideration level on October 26, 2010 (*id.* at 8-10 and 11-14)*.*  At Plaintiff's request, Administrative Law Judge Elizabeth B. Dunlap (hereinafter "ALJ") conducted a hearing by video conference on September 9, 2011, presiding from Shreveport, Louisiana.  [*Doc. 19-3* at 26-55].  Plaintiff was present from El Paso, Texas, and testified at the hearing (*id.* at 33-50), and was represented by counsel at the hearing (*id.* at 28).  Vocational expert (hereinafter "VE"), Kathleen C. Mundy, was also present and testified at the hearing.  *Id.* at 11, 50-54 and [*Doc. 19-6* at 30].

On December 14, 2011, the ALJ issued a decision denying Plaintiff's applications and finding that he is not disabled within the meaning of the Social Security Act.  *Id.* at 11-24.  On January 18, 2012, Plaintiff requested that the Appeals Council review the ALJ's decision (*Doc. 19-9* at 4-7), and, on May 22, 2012, the Appeals Council denied Plaintiff's request for review, which

made the ALJ's decision the final decision of the Commissioner (*Doc. 19-3* at 2-6).  On July 3, 2012, Plaintiff filed his complaint in this case.  [*Doc. 1*].

## II.  Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992)).  If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief.  *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003).  Courts should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for that of the Commissioner.  *Hamlin*, 365 F.3d at 1214 (citation and quotation marks omitted); *Langley*, 373 F.3d at 1118 (citation and quotation marks omitted).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Langley*, 373 F.3d at 1118 (citation and quotation marks omitted); *Hamlin*, 365 F.3d at 1214 (citation and quotation marks omitted); *Doyal*, 331 F.3d at 760 (citation and quotation marks omitted).  An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it."  *Langley*, 373 F.3d at 1118 (citation and quotation marks omitted); *Hamlin*, 365 F.3d at 1214 (citation and quotation marks omitted).  While a court may not re-weigh the evidence or try the issues *de novo*, its examination of the record as a whole must include "anything that may

undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005) (citations omitted). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

### III. Applicable Law and Sequential Evaluation Process

For purposes of DIB and SSI, a person establishes a disability when he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 405.1505(a), 416.905(a). In light of this definition for disability, a five-step sequential evaluation process (SEP) has been established for evaluating a disability claim. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the SEP, the claimant has the burden to show that: (1) the claimant is not engaged in "substantial gainful activity;" and (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and either (3) the claimant's impairment(s) either meet(s) or equal(s) one of the "Listings" of presumptively disabling impairments; or (4) the claimant is unable to perform his "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261. At the fifth step of the evaluation process, the burden of proof shifts to the Commissioner to show that the claimant is able to perform other work in the national economy, considering his residual functional capacity (hereinafter "RFC"), age, education, and work experience. *Grogan*, 399 F.3d at 1261.

## IV.  Plaintiff's Age, Education, Work Experience, and Medical History; and the ALJ's Decision

Plaintiff was born on October 17, 1982.  [*Doc. 19-7* at 2].  Plaintiff completed the ninth grade.  [*Doc. 19-8* at 32].  Plaintiff has worked as a customer service representative in a call center and as a laborer/operator in construction.  *Id.* at 33.  Plaintiff alleges that he became disabled on April 1, 2008, and he is unable to work due to "BIPOLAR/PSYCHOTIC FEATURES/DEPRESSION" and "ADHD/ANXIETY."  *Id.* at 31.

Plaintiff's medical records document treatment and records from: Southwest Counseling Center, Inc.; Lauri Greis, CNP at Ben Archer Health Center; Abraham Fiszbein, M.D.; Harold E. Alexander, Jr., M.D. [*Docs. 19-10* through *19-12*]; and Dona Ana Detention Center [*Docs. 20-1* through *20-7*].  Plaintiff's medical records also include: an Initial Psychiatric Evaluation by Harold E. Alexander, Jr., M.D., dated October 22, 2002 (*Doc. 19-12* at 9-10); a Mental Residual Functional Capacity Assessment by Renate Wewerka, Ph.D., dated July 6, 2010 (*id.* at 41-44); a Psychiatric Review Technique by Renate Wewerka, Ph.D., dated July 6, 2010 (*id.* at 45-58); a Physical Residual Functional Capacity Assessment by Eileen M. Brady, M.D., dated September 30, 2010 (*Doc. 20-7* at 8-15); a Case Analysis by Donald Gucker, Ph.D., dated October 25, 2010 (*id.* at 16); and a Medical Assessment of Ability to do Work-Related Activities (Mental) by Harold E. Alexander, Jr. M.D., dated January 20, 2011 (*id.* at 21-23).  Where relevant, Plaintiff's medical records are discussed in more detail below.

At step one of the five-step evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 1, 2008, the alleged onset date of Plaintiff's disability.  [*Doc. 19-3* at 13].  At step two, the ALJ found that Plaintiff has the following severe impairments:

"cognitive disorder, not otherwise specified; attention deficit and hyperactivity disorder (ADHD), bipolar disorder; panic disorder without agoraphobia; impulse control disorder, not otherwise specified; cannabis dependence; alcohol abuse." *Id.* At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the Listings found in 20 C.F.R. § 404, Subpt. P, Appx. 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). *Id.* at 14.

Before step four, the ALJ determined that Plaintiff has the RFC "to perform a full range of work at all exertional levels," and stated that Plaintiff "can understand, remember and carry out simple instructions as demanded in jobs at Reasoning Development Level 2 by the Dictionary of Occupational Titles," and "can interact with supervisors and co-workers occasionally during the workday, but cannot interact with the general public." *Id.* at 15. In support of the RFC finding, the ALJ states that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [Plaintiff's] symptoms not are credible to the extent they are inconsistent with the above [RFC] assessment." *Id.* at 17. The ALJ found that Plaintiff's allegations regarding his symptoms were not wholly credible because: the evidence does not support Plaintiff's claim that he has not worked since his alleged onset date of disability; Plaintiff's string of legal infractions undermines his credibility; the record does not corroborate Plaintiff's testimony about how he sustained gunshot wounds in Phoenix. *Id.* at 17-18. At step four, the ALJ found that Plaintiff is unable to perform any past relevant work, so the ALJ proceeded to the fifth step. *Id.* at 19.

At the fifth and final step, the ALJ noted that Plaintiff was 25 years old at the time of his alleged onset date, has a limited education, and is able to communicate in English. *Id.* The ALJ stated that the VE was asked "whether jobs exist in the national economy for an individual with

[Plaintiff's] age, education, work experience, and [RFC]," and the VE testified that such an individual would be able to perform the requirements of representative occupations such as hand packager or hand marker. *Id.* at 19-20.[3] The ALJ stated that "the [VE]'s testimony is consistent with the information contained in the Dictionary of Occupational Titles." *Id.* at 20. The ALJ concluded that Plaintiff "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." *Id.* The ALJ, therefore, determined that Plaintiff was not disabled within the meaning of the Social Security Act. *Id.*.

## V. Analysis

Plaintiff contends that the ALJ's decision should be remanded because she failed to assess Plaintiff's RFC properly by: (1) failing to properly apply the treating physician rule; and (2) failing to properly consider Plaintiff's moderate nonexertional limitations. [*Doc. 22* at 7-17]. As relief, Plaintiff asks the Court to reverse the Commissioner's final decision and remand this case for another hearing. *Id.* at 17. Defendant disputes Plaintiff's contentions and argues that the ALJ's decision should be affirmed because it is based on substantial evidence. [*Doc. 23* at 4-12].

### A. The ALJ's Consideration of Dr. Alexander's Opinions

Plaintiff's first claim is that the ALJ erred in rejecting the opinions of Plaintiff's treating physician, Dr. Alexander. [*Doc. 22* at 7-15]. Plaintiff contends that the ALJ erred by failing to discuss whether Dr. Alexander's "opinions are well-supported by medically acceptable clinical and

---

[3]The ALJ states that the VE testified that these occupations exist in the stated numbers in the national economy and regional economy of "Louisiana." *Id.* Plaintiff, however, lives in New Mexico. The hearing took place by video conference with Plaintiff appearing in El Paso, Texas (45 miles from Las Cruces, New Mexico, where Plaintiff resides), and the ALJ presiding from Shreveport, Louisiana. *See id.* at 11 and 33. The VE's testimony does not clarify whether the region to which she refers is New Mexico or Louisiana. *See id.* at 52. The parties do not raise the issue of whether these jobs exist in the stated numbers in New Mexico, so the Court does not consider it, but the Court notes that this appears to be a discrepancy in the ALJ's decision and/or the VE's testimony.

7

laboratory diagnostic techniques," and whether they are consistent with other substantial evidence in the record. *Id.* at 12-13. Plaintiff further contends that "the ALJ improperly relied on her own speculation" in rejecting Dr. Alexander's opinions because the ALJ believed that Dr. Alexander "allowed his long-term relationship with [Plaintiff] and his family to affect his professional objectivity and because the GAF scores in the 61-70 range indicate that [Plaintiff] is functioning pretty well." *Id.* at 13. Plaintiff states that the ALJ should have explained how the fact that Plaintiff's mother had worked as a babysitter for Dr. Alexander "would cause a professional to provide false information to the agency to get his patient on disability benefits rather than assist his patient to reenter the job market." *Id.* at 14. Plaintiff further states that the GAF scores in the 61-70 range do not mean that Dr. Alexander was of the opinion that Plaintiff was functioning well. *Id.* In addition, Plaintiff contends that the ALJ failed to consider that Plaintiff "has not been in the competitive work environment since April 2008," and that the ALJ "should have recontacted Dr. Alexander for additional information or clarification of his opinions." *Id.* at 14-15.

Defendant contends that the ALJ properly evaluated Dr. Alexander's opinions, and that Dr. Alexander's contemporaneous treatment notes and GAF ratings indicating that Plaintiff has only mild difficulties were inconsistent with Dr. Alexander's opinions that Plaintiff's mental limitations seriously interfere with work-related tasks. [*Doc. 23* at 5-6]. Defendant further contends that Plaintiff's statements to the ALJ at the hearing about his work activities and gunshot wounds conflicted with his reports to Dr. Alexander. *Id.* at 6-7. In addition, Dr. Alexander's April 20, 2010 note about Plaintiff's abilities was provided when Plaintiff was incarcerated and under the care of prison physicians, so Defendant contends that, "as the ALJ observed," the note appears to be written to assist Plaintiff and his family get help and was not based on a current examination of Plaintiff by

8

Dr. Alexander. *Id.* at 6. Finally, Defendant states that the ALJ was not required to re-contact Dr. Alexander because the ALJ's decision to reject Dr. Alexander's opinions was based on sufficient evidence. *Id.* at 7-8.

When "evaluating the medical opinions of a claimant's treating physician, the ALJ must complete a sequential two-step inquiry, each step of which is analytically distinct." *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011); *see also Pisciotta v. Astrue*, 500 F.3d 1074, 1077 (10th Cir.2007). First, the ALJ "should consider whether the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with the other substantial evidence in the record." *Pisciotta*, 500 F.3d at 1077 (citations omitted). If the answer to both these questions is "yes," then the ALJ "must give the opinion controlling weight," but if the treating physician's opinion is not entitled to controlling weight, "the ALJ must then consider whether the opinion should be rejected altogether or assigned some lesser weight." *Id.* When a treating physician's opinion is not given controlling weight, it is still entitled to deference and must be weighed using relevant factors such as: the length of treatment and frequency of examination, and the nature and extent of the treating relationship; the extent to which the opinion is supported by relevant evidence, particularly medical signs and laboratory findings; the extent to which the opinion is consistent with the record as a whole; the doctor's specialization in the medical field upon which an opinion is given; and other factors tending to support or contradict the opinion. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c). Although the "ALJ must evaluate every medical opinion in the record [recognizing that] the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional," ultimately, the ALJ's decision must contain "reasons that are sufficiently specific to make clear to any subsequent reviewers the weight the

adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir.2004) (citations and internal quotation marks omitted).

Here, the ALJ states that she afforded no weight to Dr. Alexander's opinions in his January 2011 Medical Assessment of Ability to do Work-Related Activities (Mental) form, in which Dr. Alexander found that Plaintiff has mental limitations that seriously interfere with his abilities to: "remember work-like procedures, understand/remember detailed instructions, interact with the general public, respond appropriately to criticism from supervisors, get along with coworkers/peer[s], maintain socially appropriate behavior, respond appropriately to changes in the workplace, take adequate precautions, and make plans independently." [*Doc. 19-3* at 18] (citing *Doc. 20-7* at 21-23). In support of this finding, the ALJ notes that Dr. Alexander has a "long-term personal relationship with [Plaintiff,] which apparently affected his objectivity" because he "expressly stated . . . that he provided his written statement that [Plaintiff] was 'disabled and unable to work' to [Plaintiff's] mother 'for assistance with getting help' for [Plaintiff] and 'his family.'" [*Doc. 19-3* at 18] (citing *Doc. 19-12* at 39). In addition, the ALJ states that Dr. Alexander's opinions in this January 2011 Medical Assessment are inconsistent with Dr. Alexander's contemporaneous treatment notes and GAF ratings describing "[Plaintiff]'s difficulties in functioning as only 'mild' for . . . at least six months." [*Doc. 19-3* at 18] (comparing *Doc. 20-7* at 21-23 to *Doc. 20-7* at 17-20, 24-25 and 27-28).[4] The ALJ states that, instead, she afforded great weight to state agency psychological consultant Dr. Wewerka's opinions that Plaintiff can "understand, remember and carry out simple instructions, make simple decisions, and respond appropriately to

---

[4]The Court does not find that Dr. Alexander used the word "mild" to describe Plaintiff's functioning.

10

changes in a routine setting with well-defined expectations and limited personal interactions." [*Doc. 19-3* at 18].

The Court finds that the ALJ failed to properly evaluate Dr. Alexander's January 2011 Medical Assessment because it appears that the ALJ did not consider whether the assessment is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and whether it is consistent with the other substantial evidence in the record. While it appears that the ALJ may have implicitly found that Dr. Alexander's 2011 Medical Assessment was not supported by proper diagnostic techniques or by other substantial evidence in the record because she went on to give the opinions in that assessment no weight, the ALJ fails to state whether or not she undertook the first step required when evaluating a treating physician's opinion, which is to consider whether the assessment was supported by proper diagnostic techniques or by other evidence in the record. *See Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (explaining that "a finding at this stage as to whether the [treating physician's] opinion is either unsupported or inconsistent with other substantial evidence is necessary so that we can properly review the ALJ's determination on appeal") (internal parentheses omitted). Instead, the ALJ states that she rejected this assessment because of Dr. Alexander's personal relationship with Plaintiff's mother and because the assessment was inconsistent with Dr. Alexander's contemporaneous treatment notes and the GAF ratings he assigned to Plaintiff, which is not the proper consideration under the first step for evaluating a treating physician's opinion. *See McGoffin v. Barnhart*, 288 F.3d 1248, 1252-53 (10th Cir. 2002) (finding that the ALJ improperly rejected the treating physician's assessment when the ALJ's rejection was based on the ALJ's credibility judgments and speculation, stating that an ALJ "may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and

11

*not due to his or her own credibility judgments, speculation or lay opinion*" and the fact that "a family doctor naturally advocates his patient's cause is not a good reason to reject his opinion as a treating physician") (citation and internal quotation marks omitted).  In contrast, in *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007), the Tenth Circuit upheld the ALJ's decision to give very little weight to opinions of various treating physicians when the ALJ cited contrary, well-supported medical evidence.  *See also Bussell v. Astrue*, No. 11-5115, 463 Fed. Appx. 779, 782, 2012 WL 718995 (10th Cir. March 7, 2012) (unpublished) (finding that the ALJ properly considered the claimant's treating physician's opinion when the ALJ followed the two-step process by explaining how the opinion was not supported by objective medical evidence and was inconsistent with other evidence in the record) (citation omitted).  If the ALJ considered whether Dr. Alexander's assessment was supported by proper diagnostic techniques or by other evidence in the record, she does not articulate that consideration and the Court is "not in a position to draw factual conclusions on behalf of the ALJ."  *Drapeau v. Massanari*, 255 F.3d 1211, 1214 (10th Cir. 2001) (citation and internal quotation marks omitted).  Thus, the Court finds that the ALJ failed to properly evaluate Dr. Alexander's January 2011 Medical Assessment and this claim should be granted.

The Court finds that Plaintiff's contentions that the ALJ should have considered that Plaintiff has not been in the competitive work environment since 2008 and that the ALJ should have re-contacted Dr. Alexander for additional information or clarification of his opinions are without merit.  [*Doc. 22* at 14-15].  An ALJ need only re-contact a treating source "[i]f evidence from the claimant's treating doctor is inadequate to determine if the claimant is disabled."  *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir.2004); see also 20 C.F.R. § 404.1520b(c).  Plaintiff makes

no showing that the evidence from Dr. Alexander is inadequate to determine whether Plaintiff is disabled, or how consideration of Plaintiff's time outside of a competitive work environment is relevant, so the Court finds that these claims should be denied.

### *B. The ALJ's Consideration of Plaintiff's Nonexertional Limitations*

Next, Plaintiff contends that the ALJ erred by failing to properly consider Plaintiff's moderate nonexertional limitations with regard to concentration, persistence or pace and social functioning. [*Doc. 22* at 15-16]. Plaintiff states that the ALJ erred by failing to discuss why she did not include Plaintiff's moderate difficulties in concentration, persistence and pace in her RFC finding, and that the ALJ should have explained why Plaintiff's moderate difficulties in social functioning would exclude dealing with the general public, but allows occasional interaction with supervisors and co-workers. *Id.* In addition, Plaintiff contends that the ALJ failed to address the moderate limitations found by the state agency psychologist. *Id.* at 16-17.

In response, Defendant contends that the ALJ properly considered Plaintiff's non-exertional limitations because they were accounted for in the ALJ's RFC findings, and the ALJ properly relied on state agency psychological consultant, Dr. Wewerka. [*Doc. 23* at 8-10]. Defendant further states that the ALJ's restriction to jobs requiring no more than "reasoning development level 2"[5] properly took into account Plaintiff's moderate nonexertional limitations. *Id.* at 11.

First, the Court finds that Plaintiff's contention that the ALJ failed to take into consideration in the ALJ's RFC assessment the ALJ's finding that Plaintiff has moderate limitations in social

---

[5]Reasoning Development Levels, as defined in the Dictionary of Occupational Titles, are a division of "General Educational Development (GED)" and are rated between "1" and "6;" with Level 6 being the highest functioning level. Dictionary of Occupational Titles, Vol. II, App. C, III (4th Ed. Rev.1991), 1991 WL 688702. Reasoning Development Level 2 requires a claimant to: "Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions;" and "Deal with problems involving a few concrete variables in or from standardized situations." *Id.*

functioning and concentration, persistence, and pace is without merit. *See* [*Doc. 19-3* at 14]. As explained by the Tenth Circuit in *Anderson v. Colvin*, an ALJ is not required to include the limitations found at steps two and three of the sequential evaluation process in the ALJ's RFC assessment. *Anderson*, No. 12-1102, 2013 WL 1339379, *6 (10th Cir. April 4, 2013) (unpublished); *see also* SSR 96-8p at *4 (explaining that "the [ALJ] must remember that the limitations identified in the 'paragraph B' . . . criteria[6] are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process"). The ALJ, therefore, was not required to include her step-three findings regarding Plaintiff's nonexertional limitations in her RFC assessment. In addition, the ALJ properly explained in her decision that the limitations identified in Dr. Wewerka's "paragraph B criteria" of her Psychiatric Review Technique (hereinafter, "PRT") (*see Doc. 19-12* at 55) "are not a[n RFC] assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process." [*Doc. 19-3* at 15]. The Court, therefore, finds that the ALJ did not err in failing to include Dr. Wewerka's paragraph B findings regarding Plaintiff's moderate limitations in the ALJ's RFC assessment. *See also Anderson*, 2013 WL 1339379 at *6 ("We agree with the Commissioner that the ALJ was not required to include any of Dr. Pelc's B criteria opinions in his RFC assessment.") (citation and internal quotation marks omitted).

Second, the Court finds that the ALJ properly took into account Plaintiff's moderate limitations in social functioning by finding that Plaintiff can interact with supervisors and co-workers only occasionally, and that he should not interact with the general public. *See*

---

[6]"Paragraph B" criteria are used by the ALJ to determine whether an individual meets a mental impairment listing at step three, and the criteria are: "[a]ctivities of daily living; social functioning; concentration, persistence, or pace; or episodes of decompensation." 20 C.F.R. pt. 404, subpt. P, app. 1, Listing 12.00C - Mental Disorders.

[*Doc. 19-3* at 15]. This limitation in the ALJ's RFC finding is consistent with Dr. Wewerka's finding that Plaintiff would benefit from a work environment with limited personal interactions (*Doc. 19-12* at 43), and Plaintiff fails to show how this limitation conflicts with any other evidence in the record.

Finally, the Court finds that the ALJ's RFC assessment does not adequately take into account Dr. Wewerka's findings of moderate limitations in sustained concentration and persistence in her mental RFC assessment. [*Doc. 19-12* at 41-43]. In Section I of the mental RFC assessment, Dr. Wewerka found that Plaintiff has moderate limitations with the ability to: maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; sustain an ordinary routine without special supervision; complete a normal workday and workweek without interruptions from psychologically-based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods. *Id.* at 41-42. In Section III of the mental RFC assessment, Dr. Wewerka found that Plaintiff "can understand, remember and carry out simple instructions, make simple decisions, and respond appropriately to changes in a routine work-setting, and "would benefit from a work environment with well-defined expectations and limited personal interactions." *Id.* at 43. While the ALJ states that she afforded great weight to Dr. Wewerka's Section III findings (*Doc. 19-3* at 18, citing *Doc. 19-12* at 43), the ALJ fails to take into account Dr. Wewerka's findings of moderate limitations in Section I of the mental RFC assessment, and does not state why she rejected those findings, which is error. *See Haga v. Astrue*, 482 F.3d 1205, 1209 (10th Cir. 2007), ("[T]he ALJ should have explained why he rejected four of the moderate restrictions on Dr. Rawlings' RFC assessment while appearing to adopt the others."). An ALJ may not "pick and

15

choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence." *Carpenter v. Astrue*, 537 F.3d 1264, 1265 (10th Cir.2008) (citation and internal quotation marks omitted).  In addition, because it is not obvious whether or not Dr. Wewerka's findings of moderate limitations in Section I are consistent with her conclusion in Section III, the ALJ could not properly rely on the summary in Section III.  *See Baysinger v. Astrue*, Civil Action No. 11-cv-00333-WYD, 2012 WL 1044746, at *6 (D.Colo. March 28, 2012) (unpublished) (explaining that the state agency examiner should have included the moderate limitations in the Section III summary or at least ensured that they were represented in some manner).

The Court also finds no support for Defendant's contention that the ALJ's RFC limitation to Reasoning Development Level 2 takes into account these moderate limitations. Jobs at Reasoning Development Level 2 require a claimant to: "Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions[ and d]eal with problems involving a few concrete variables in or from standardized situations" (Dictionary of Occupational Titles, Vol. II, App. C, III (4th Ed. Rev.1991), 1991 WL 688702), which does not account for Dr. Wewerka's findings of moderate limitations regarding Plaintiff's ability to maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, sustain an ordinary routine without special supervision, complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods.  For these reasons, the Court finds that the ALJ failed to properly consider Plaintiff's nonexertional limitations in her RFC findings and that this claim should be granted.

## VI.  Recommended Disposition

**IT IS HEREBY RECOMMENDED,** for the reasons stated above, that Plaintiff's *Motion to Reverse and Remand for Rehearing With Supporting Memorandum (Doc. 22)* be **GRANTED in part** and **DENIED in part** as set forth above, and the decision of the Commissioner of Social Security (hereinafter "Commissioner") be **REMANDED** for further proceedings consistent with this opinion.

_____
**LOURDES A. MARTÍNEZ**
**UNITED STATES MAGISTRATE JUDGE**